UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EVERETT C. BUCK, JR.,

                        Plaintiff,

               -vs-                           12-CV-857-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                        Defendant.

_____

APPEARANCES:        MYERS, QUINN & SCHWARTZ, LLP
                        (LEWIS L. SCHWARTZ, ESQ., of Counsel)
                        Buffalo, New York
                        Attorneys for Plaintiff

                        WILLIAM J. HOCHUL, JR.
                        United States Attorney, Western District of New York
                        (MARY K. ROACH, AUSA, of Counsel)
                        United States Attorney's Office
                        Buffalo, New York
                        Attorneys for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated November 14, 2013.

Item 17.

        Plaintiff Everett C. Buck, Jr., initiated this action pursuant to the Social Security Act,

42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social

_____

[1]At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and was properly named in the complaint as the defendant under 42 U.S.C. § 405(g).  On February 14,  2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure.  For continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits, as provided for in Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 *et seq*.   Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff initially filed applications for SSDI and SSI benefits with the Social Security Administration ("SSA") on December 12, 2002, alleging disability due to borderline intellectual functioning and vision problems, with an onset date of April 1, 2001 (Tr. 58-62; 296-99).[2] These claims were administratively denied by the SSA on February 25, 2003 (Tr. 18-22).   Plaintiff requested a hearing, which was conducted on June 12, 2006, by Administrative Law Judge ("ALJ") Robert T. Harvey (Tr. 315-355).   On November 6, 2006, ALJ Harvey rendered a Notice of Decision-Unfavorable, denying plaintiff's applications for SSD and SSI benefits (Tr. 9-16; 389-400).   Plaintiff timely filed a request for review of the ALJ's decision with the Appeals Council, and on February 23, 2007, the ALJ's decision became the final determination of the Commissioner when the Appeals Council denied the request for review (Tr. 5-8).   Plaintiff then filed an action in this court, Civ. No. 07-CV-250-JTC, seeking judicial review of the Commissioner's determination pursuant to 42 U.S.C. § 405(g).

---

[2]Citations preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 5).

On May 11, 2007, while Civ. No. 07-CV-250-JTC was pending, plaintiff filed a second application for SSDI and SSI benefits, alleging the same onset date of April 1, 2001 (Tr. 405).  On August 7, 2007, the SSA issued a favorable decision, finding plaintiff to be disabled as of November 7, 2006 (one day after the date of ALJ Harvey's decision denying plaintiff's previous applications) based on a primary diagnosis of cognitive disorder (Tr. 401).  On April 23, 2008, following the court's remand of the matter to the Commissioner upon stipulation of the parties (Tr. 387-88), the Appeals Council issued an Affirmation and Order affirming the SSA's favorable determination and remanding the matter to an ALJ for a new hearing to address plaintiff's eligibility for benefits covering the period between April 1, 2001 and November 6, 2006 (Tr. 405-06).  The Appeals Council made specific reference to medical evidence indicating that plaintiff's impairments appeared to be related to traumatic brain injury from a 1969 motor vehicle accident, and set forth detailed instructions for the ALJ to follow on remand regarding consideration of treating and evaluating source opinions; evaluation of plaintiff's mental impairment "in accordance with the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a;" assessment of plaintiff's maximum residual functional capacity ("RFC") in light of noted limitations; obtaining the testimony of a vocational expert ("VE") to clarify the effect of the assessed limitations on plaintiff's occupational base; and consideration of the impact, if any, of the favorable determination of eligibility for benefits as of November 6, 2006 (Tr. 406).

On March 9, 2009, a new hearing was conducted by ALJ Marilyn D. Zahm, at which plaintiff testified and was represented by Lewis L. Schwartz, Esq. (plaintiff's counsel in this action) (Tr. 663-98).  Also appearing at the hearing and testifying under oath were VE James A. Phillips (Tr.  693-97), and plaintiff's half-sister Joyce Metcalf (Tr. 688-93).  On

-3-

April 14, 2009, ALJ Zahm rendered a Notice of Decision-Unfavorable, denying plaintiff's claim for SSD and SSI benefits for the period from April 1, 2001 to November 6, 2006 (Tr. 430-44).   The ALJ determined that, while the medical evidence and the VE's hearing testimony suggested that an individual with plaintiff's RFC and assessed limitations could not perform the physical and mental demands of plaintiff's past relevant work as a "salvage laborer" as that job is performed in the national economy, plaintiff was capable of performing the job during the period at issue "as actually performed," directing a finding of "not disabled" (Tr. 442-43).

Plaintiff timely filed a request for review with the Appeals Council (Tr. 445-47), and on March 2, 2011, the Appeals Council issued an order once again remanding the claim for further proceedings (Tr. 459-63).   The Appeals Council found that ALJ Zahm's decision did not comply with the prior instruction to evaluate plaintiff's mental impairment in accordance with the  "special technique" described in the Commissioner's regulations (Tr. 462).   The Appeals Council also found that:

> [B]ecause [plaintiff] was found disabled [as of November 7, 2006] primarily due to his cognitive disorder and he reportedly suffered a post-traumatic brain injury referable to a 1969 accident, the inference is raised as to whether an earlier onset date is warranted in this case (Social Security Ruling 83-20).  As it is necessary to infer the onset date from the medical and other evidence that describe the claimant's history and symptomatology, the Appeals Council believes that [plaintiff]'s severe cognitive disorder should be re-evaluated as to its onset, severity and limiting effects prior to November 7, 2006.  A medical (mental) expert should be called upon to assist the [ALJ] in making this determination involving a cognitive disorder.

(Tr. 462).  The Appeals Council set forth detailed directions for the ALJ, on remand, to: (1) further consider to the severity of plaintiff's impairments and whether they meet or equal the severity of any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix

1 (the "Listings"); (2) fully evaluate plaintiff's mental impairment in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a and 416.920a; (3) give further consideration to plaintiff's maximum RFC, and provide rationale with specific references to evidence of record to support the assessed limitations; (4) obtain evidence from a medical expert to clarify the nature, severity, onset and functional limitations of plaintiff's impairments, singly and combined; (5) if necessary, obtain evidence from a VE to assist in the step four finding as to whether plaintiff is capable of meeting the physical and mental demands of performing his past relevant work; (6) if necessary, obtain evidence from a VE regarding the effects, if any, of plaintiff's non-exertional limitations and the other vocational factors upon his ability to perform work existing in significant numbers in the national economy; and (7) identify and resolve any conflicts between the VE testimony and information in the Dictionary of Occupational Titles ("DOT") (Tr. 459-63).

On June 3, 2011, a further hearing was conducted by ALJ Zahm[3] at which plaintiff testified and was again represented by Mr. Schwartz (Tr. 699-725). Also appearing at the hearing and testifying under oath were VE Jay Steinbrenner (Tr. 713-16, 718-25), and medical expert Ralph F. Sibley, Ph.D., a psychologist (Tr. 702-13). On July 7, 2011, ALJ Zahm rendered a Notice of Decision-Unfavorable, again denying plaintiff's claim for SSD and SSI benefits for the period from April 1, 2001 to November 6, 2006 (Tr. 371-86). The ALJ found that plaintiff had a severe visual impairment and severe organic mental disorder during the period at issue, but that these impairments, considered alone or in combination,

---

[3]The Appeals Council's March 2, 2011 remand order specified that, "[a]s this case was previously remanded to the same [ALJ], the Appeals Council directs that, upon remand, this case be assigned to another [ALJ]" (Tr. 463). As noted in her July 7, 2011 written determination, ALJ Zahm found this statement to be incorrect, because "[t]he case had been previously remanded to the previous [ALJ], Robert T. Harvey, not the undersigned" (Tr. 374).

did not meet or equal the severity of any listed impairment (Tr. 377-78).  Following a discussion of the evidence in the record, the ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, with certain specified nonexertional limitations, including avoidance of jobs involving more than simple repetitive work, exposure to unprotected heights and dangerous machinery, acute depth perception, performance at a fast pace, ability to read at more than a low third grade level, and interaction with others (Tr. 378-84).  The ALJ then noted that, notwithstanding the VE's hearing testimony that a person with these limitations could not perform plaintiff's past relevant work as a salvage laborer as it existed in the national economy, plaintiff's testimony that his employer on that job did not require him to work around dangerous machinery demonstrated that plaintiff could perform his past relevant work "as he performed it" (Tr. 385).  Finally, the ALJ found that even if plaintiff could not have returned to his past relevant work during the time period at issue, VE Steinbrenner's testimony established that there were a significant number of jobs in the national economy at that time that an individual of plaintiff's age, with similar education, work experience, residual functional capacity, and nonexertional limitations, could perform (Tr. 385-86).

By letter dated August 10, 2012 (Tr. 356-59), the Appeals Council denied plaintiff's request for review, rendering ALJ Zahm's July 7, 2011 decision the final determination of the Commissioner.  Plaintiff then filed this action on September 7, 2012, once again seeking judicial review of the Commissioner's denial of SSDI/SSI benefits covering the period from April 1, 2001 to November 6, 2006, and both parties moved for judgment on the pleadings in accordance with the court's scheduling orders.

For the reasons that follow, the court grants plaintiff's motion for judgment on the pleadings, denies the Commissioner's motion, and remands the matter to the Commissioner solely for calculation of benefits.

## DISCUSSION

### A.  Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner."

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, ___ F. App'x ___, 2013 WL 4750284, at *3 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

**B.     Standard for Determining Eligibility for Disability Benefits**

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R.

§§ 404.1505(a), 416.905(a).  The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities...."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  As stated in *Rosa*, "[i]n the ordinary case, the Commissioner meets [her] burden at the fifth step by resorting to the applicable medical vocational guidelines

(the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." *Rosa*, 168 F.3d at 78 (internal quotation marks and citation omitted).  However, where (as here) "the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of … work that the claimant can perform… ," exclusive reliance on the grids is inappropriate, and "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.' " *Id.*  (quoting *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)).[4]

In this case, as discussed above, ALJ Zahm's July 7, 2011 written decision reflects her  determination that plaintiff did not meet his burden at step four of the sequential evaluation process to show that his impairments prevented him from returning to his past relevant work as a salvage laborer during the period at issue.  The ALJ then proceeded to find, at step five, that even if plaintiff could meet this burden, VE Steinbrenner's hearing testimony established that an individual of plaintiff's age, with similar education, work experience, residual functional capacity, and nonexertional limitations, could perform a significant number of jobs in the national economy, directing a finding of "not disabled." (Tr. 385-86).

---

[4] Courts in the Second Circuit have noted a slight modification to this longstanding burden-shifting scheme as the result of amendments to the SSA's regulations, effective August 26, 2003, which removed the requirement that the Commissioner bear the burden of showing residual functional capacity. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) ("Under the applicable new regulation [20 C.F.R. § 404.1560(c)(2)], the Commissioner need only show that there is work in the national economy that the claimant can do; [s]he need not provide additional evidence of the claimant's residual functional capacity.").  The Second Circuit has left open the question of whether the Commissioner still bears the burden of proving RFC if, as in this case, the claimant's onset of disability is earlier than August 26, 2003. *Mancuso v. Astrue*, 361 F. App'x 176, 177 (2d Cir. 2010).  However, district courts in the Second Circuit have consistently applied the old *Curry v. Apfel* standard when the claimant's onset of disability precedes that date. *See Cataneo v. Astrue*, 2013 WL 1122626, at *22 (E.D.N.Y. Mar. 17, 2013) (collecting cases).

In support of his motion for judgment on the pleadings, plaintiff contends that ALJ Zahm committed the following errors in her July 7, 2011 determination:

1.     The ALJ failed to follow the Commissioner's policy, outlined in Social Security Ruling ("SSR") 06-03p, for evaluation of "other source" opinion evidence;

2.     The ALJ failed to follow the Commissioner's policy, outlined in SSR 83-20, for establishing the onset date of plaintiff's disability; and

3.     The ALJ failed to consider the combined effect of all severe and non-severe impairments in her assessment of plaintiff's RFC.

*See* Items 11, 16.  These contentions are now addressed in turn.

**1.     Evaluation of Opinion Evidence from "Other Sources"**

On July 20, 2007, vocational rehabilitation consultant Valerie F. Nixon, MBA, CDMS, interviewed plaintiff, reviewed his medical records, and performed vocational testing (Tr. 578-586).   Ms. Nixon administered the Wide Range Achievement Test Revision 3 ("WRAT-3"), on which plaintiff scored at a third grade level for reading and spelling, and a fifth grade level for arithmetic (Tr. 582).  Ms. Nixon determined plaintiff's past relevant work to be as a Logger (DOT Code 454.684-018) and Chemical Processing Laborer (DOT Code 559.687-050), and that given plaintiff's current vision and cognitive deficits, he could not perform the work requirements of either job (Tr. 585).  Ms. Nixon considered three alternative occupations: Assembler (DOT Code 700.684-014), Harvest Worker, Vegetable (DOT Code 402.687-014), and Laborer, Brush Clearing (DOT Code 459.687-010), but determined that plaintiff's visual deficits, cognitive deficits, and borderline intellectual

functioning significantly eroded his opportunity for employment in any of these occupations (Tr. 585-586).  Ms. Nixon concluded that, based on plaintiff's work experience, education, transferable skills, and residual functional capabilities resulting from his borderline intelligence, cognitive impairments and visual deficits, she could not find any positions available that would be appropriate employment for plaintiff (Tr. 586).

At the March 9, 2009 hearing, ALJ Zahm acknowledged receipt of Ms. Nixon's report as evidence in the record (*see* Tr. 666-67), but there is no mention of the report in either of ALJ Zahm's decisions.  According to plaintiff, Ms. Nixon's opinion as a vocational rehabilitation consultant provides persuasive evidence bearing upon plaintiff's ability to return to his past relevant work during the time period at issue, and the ALJ's failure to indicate that she considered the opinion is a clear violation of the Commissioner's policy interpretation ruling set forth in SSR 06-03p.

SSR 06-03p provides that, in evaluating "all relevant evidence in a case record," the ALJ must consider not only opinion evidence from "acceptable medical sources," but also evidence provided by " 'non-medical sources' including … rehabilitation counselors …." SSR 06-03p,  2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006); *see Patel v. Colvin*, 2013 WL 3873234, at *6 (E.D.N.Y. Jul. 25, 2013) (vocational expert qualifies as non-medical or "other source" whose report "might well have influenced the ALJ's decision").  The ruling directs the ALJ to use the same factors in evaluating the opinions of "other sources" as are used to evaluate the opinions of "acceptable medical sources," including such factors as:

> [T]he nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939, at *5.  As explained in the ruling:

> Although there is a distinction between what an adjudicator must consider
> and what the adjudicator must explain in the disability determination or
> decision, the adjudicator generally should explain the weight given to
> opinions from these "other sources," or otherwise ensure that the discussion
> of the evidence in the determination or decision allows a claimant or
> subsequent reviewer to follow the adjudicator's reasoning, when such
> opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *6.   Under this guidance, "[w]hile the Commissioner

is thus  free to decide that the opinions of 'other sources' … are entitled to no weight or

little weight, those decisions should be explained."  *Sears v. Astrue*, 2012 WL 1758843,

at *3 (D.Vt. May 15, 2012);  *see also Colon v. Astrue*, 2013 WL 2245457, at *10 (W.D.N.Y.

May 21, 2013) (finding abuse of discretion for ALJ to "entirely ignore" vocational

rehabilitation counselor's assessment of claimant's RFC).

In the court's view, Ms. Nixon's report reflects a thorough professional examination

of plaintiff's residual employability, based not only on the information in plaintiff's file

regarding his medical condition and vocational capacity during the relevant time period (as

was the VE testimony at trial), but also on direct personal contact with plaintiff during the

interview process and administration of the WRAT3 to assess his intellectual functioning.

The report presents a detailed explanation of the evidence supporting her opinion that,

given his limited residual functional capacity due to his borderline intelligence, cognitive

impairments and visual deficits,  plaintiff would be unable to perform not just his past

relevant work as reported, but any work whatsoever in the national economy.  In light of

the Appeals Council's admonition regarding the need for the ALJ on remand to carefully

re-evaluate the onset date considering the apparent connection between plaintiff's severe

cognitive disorder and any post-traumatic brain injury suffered in the 1969 accident, the ALJ's apparent disregard for Ms. Nixon's findings and opinion is perplexing.

The problem is further magnified when Ms. Nixon's conclusions about plaintiff's extremely limited capacity for engaging in substantial gainful employment is viewed in conjunction with the similar opinion offered by VE Steinbrenner at the hearing that an individual of plaintiff's age, education, and experience, with similar nonexertional limitations, could not perform the requirements of plaintiff's past relevant work as a salvage laborer (*see* Tr. 716-17).  Given the ALJ's acknowledgment of Ms. Nixon's report as evidence of record, and considering the likelihood that the combined effect of these "other source" opinions would have some impact on a reasoned determination of plaintiff's employability during the period at issue, the ALJ should have discussed Ms. Nixon's findings and opinion, and should have explained the reasons for the weight she assessed to Ms. Nixon's report, if any, in reaching her conclusions that plaintiff was capable of performing his past relevant work "as it was performed."

Likewise, ALJ Zahm's disregard of Ms. Nixon's opinion calls into serious question the alternative finding, at step five of the sequential analysis, that plaintiff could perform other jobs that exist in the national economy in significant numbers.  As discussed above, after rejecting VE Steinbrenner's hearing testimony regarding plaintiff's inability to return to his past relevant work, the ALJ accepted the VE's opinion that an individual of plaintiff's age, education and work experience, having the same limitations as plaintiff, could have performed the work requirements of the representative occupation of packaging machine tender with a significant number of available jobs in the economy during the relevant period (Tr. 718-19).  This opinion is directly contrary to the opinion expressed by Ms. Nixon that

-15-

there were no jobs plaintiff could perform because of his borderline intelligence, cognitive impairments, and visual deficits (Tr. 586).   In light of this conflicting evidence in the case record, and considering the likely impact on the outcome, the ALJ had the obligation under the SSA's regulations and interpretive policy guidance rulings to explain the weight given to the opinions from these "other sources" in order to ensure that the discussion of the evidence in her decision would allow the reviewing court to follow her reasoning in denying plaintiff's claim for benefits.   Without this explanation, the court cannot conclude that  the facts of the case have been evaluated in the light of correct legal standards.

Accordingly, the court finds that the ALJ's determination that plaintiff was not entitled to SSDI or SSI benefits during the period at issue was based on a misapplication of the law, regulations, and the Commissioner's policy directives, and disregarded highly probative evidence likely to have an effect on the outcome.

## 2.    Establishing the Onset Date

In its March 2, 2011 remand order, the Appeals Council instructed the ALJ to carefully re-evaluate the onset date of plaintiff's disability, with specific reference to SSR 83-20, which explains the Commissioner's policy for establishing the onset date.   Under SSR 83-20, "[t]he onset date of disability is the first day an individual is disabled as defined in the Act and the regulations.   Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." SSR 83-20, 1983 WL 31249, at *1  (S.S.A. 1983).   The ruling advises that "the date alleged by the individual should be used if it is consistent with all the evidence available …," and that "in some cases, it may be possible, based on the medical evidence to reasonably infer that

the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." *Id.* at *3. In such cases, the ALJ "should call on the services of a medical advisor when onset must be inferred." *Id.*

As discussed above, in both of its remand orders, the Appeals Council noted the apparent evidentiary link between plaintiff's cognitive deficiencies and the likelihood of post-traumatic brain injury suffered in the 1969 motor vehicle accident, giving rise to the inference of an onset date closer to the April 1, 2001 date alleged by plaintiff (Tr. 58) than the November 7, 2006 onset date established by the agency's favorable determination (and ultimately sustained by the Commissioner). In the second remand order, the Appeals Council specifically directed the ALJ to re-evaluate the onset date, and to call upon a "medical (mental) expert" to assist in the re-evaluation. ALJ Zahm complied with this directive to the extent that she utilized the services of Dr. Ralph Sibley, a licensed psychologist, who testified with regard to the limitations of plaintiff's cognitive impairments (Tr. 706-12). However, the ALJ did not inquire, and Dr. Sibley did not testify, about the apparent evidentiary link between those cognitive impairments and any post-traumatic brain injury from the 1969 accident in a way that could be viewed as an attempt to re-evaluate the onset date under the policy guidance of SSR 83-20.

In addition, in the absence of any medical evidence or hearing testimony to support the November 7, 2006 onset date established by virtue of the agency's favorable determination, the only conclusion to be drawn is that the date was arbitrarily chosen based on the November 7, 2006 date of the initial denial of benefits by ALJ Haley. As reflected in the remand directives, the Appeals Council deemed the testimony of a medical

expert necessary to provide a medically determined basis for establishing the date on which the effects of plaintiff's impairments became disabling.  After three hearings, two remands, more than eleven years of administrative pursuit, and two federal court lawsuits, this essential question remains unaddressed.

Accordingly, the court finds that ALJ Zahm's decision that plaintiff is not entitled to SSDI or SSI benefits during the period at issue cannot be upheld because it was based on a misapplication of the Commissioner's regulations and policy directives regarding the determination of disability onset.

### 3.      Failure to Consider All of Plaintiff's Severe Impairments

As discussed above, in her July 7, 2011 decision, the ALJ found at step two of the sequential evaluation that plaintiff had a severe visual impairment and severe organic mental disorder during the period at issue, and at step three, that these impairments, considered alone or in combination, did not meet or equal the severity of any listed impairment (Tr. 377-78).  Plaintiff contends that the ALJ failed to also consider plaintiff's borderline intellectual functioning, traumatic brain injury, and right ankle injury to be severe impairments, which had a negative impact on the remaining steps of the sequential evaluation—particularly, the assessment of plaintiff's RFC at steps four and five.

> At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.

SSR 96-3P, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1520(c); *Murphy v. Astrue*, 2013 WL 1452054, at *3 (W.D.N.Y. Apr. 9, 2013).

Further, the ALJ "is required to 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity' to establish eligibility for Social Security benefits." *Burgin Astrue*, 348 F. App'x 646, 647 (2d Cir. 2009) (alteration in original) (quoting 20 C.F.R. § 404.1523); *see also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995) ("[A]s this court has long recognized, the combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe."). If the ALJ finds a medically severe combination of impairments, the combined impact of the impairments must be considered throughout the disability determination process. 20 C.F.R. § 404.1523; *Burgin*, 348 F. App'x at 647.

In addition, SSR 96-8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

In this case, ALJ Zahm found in her first unfavorable decision in April 2009 that plaintiff had the a severe visual impairment and severe borderline intellectual functioning during the period at issue (Tr. 436). Then, in her second unfavorable decision in July 2011, the ALJ found plaintiff's severe impairments to be "a visual impairment and

organic mental disorder affecting his memory" (Tr. 377).    According to plaintiff, the evidence of record reflects that he clearly suffers from both severe borderline intellectual functioning and severe organic mental disorder, and that the ALJ should have considered the combined effects of these conditions—along with the effects of his other severe and non-severe impairments (*i.e.*, traumatic brain injury and right ankle injury)— throughout the sequential evaluation process.

Indeed, the court's review of the record reveals substantial evidence to support plaintiff's contention that his borderline intellectual functioning and organic mental disorder should be considered as two distinct impairments.  Plaintiff underwent a consultative adult psychiatric evaluation in January 2003, conducted by state-licensed psychologist Renee Baskin-Creel, Ph.D., who diagnosed plaintiff with borderline intellectual functioning (Tr. 251),  and in July 2005, Thomas Ryan, Ph.D. conducted an intelligence evaluation of plaintiff, also reporting a diagnosis of borderline intellectual functioning (Tr. 288).  The record also reflects that plaintiff dropped out of high school in 1968, having taken two years to finish ninth grade (Tr. 110, 325, 581, 602), indicating that his intellectual difficulties pre-dated the traumatic head injury he suffered in1969, diagnosed as the source of his organic mental impairment (Tr. 622-27).

In December 1969, plaintiff sustained severe injuries in a car accident (Tr. 689). Although there are no contemporaneous medical reports in the present record, there is substantial evidence indicating that plaintiff suffered a skull fracture, traumatic brain injury, jaw and facial fractures (requiring multiple reconstructions), partial loss of vision in the right eye, left shoulder fracture, ruptured left lung, fractured ribs, and partial right side paralysis as the result of the accident (Tr. 197, 252, 622).  Following a consultative internal medicine

examination of plaintiff in July 2007, Dr. Adebukola O. Abiola, M.D., reported that plaintiff has "significant memory impairment" as the result of the injuries suffered in the 1969 accident (Tr. 627).

There is also evidence in the record indicating that plaintiff's right ankle injury has resulted in chronic leg and ankle pain as well as difficulty in walking and standing.  For example, Dr. Baskin-Creel noted plaintiff's history of two separate hospitalizations for a broken right ankle (Tr. 248), and Dr. Steven Dina, M.D., noted the possibility of a third fracture of the same ankle (Tr. 252).  In his July 2007 report, Dr. Abiola  noted right ankle dorsiflexion was limited to 10 degrees (Tr. 625), and found diminished pain and vibratory senses in the right foot and leg (Tr. 626).

In light of this evidence, when viewed in light of the record as a whole, the court finds that ALJ Zahm should have indicated in her decision that she fully considered the combined effect of all of plaintiff's impairments regardless of whether every impairment qualified as severe, and further, that she evaluated their combined impact on plaintiff's ability to work.   By failing to do so, the ALJ's RFC assessment and ultimate finding that plaintiff was not disabled during the period at issue was based on a misapplication of the Commissioner's regulations and policy guidance rulings, and cannot be upheld.

## C.     Remedy

Having determined that the Commissioner's denial of plaintiff's claim for benefits covering the period between April 1, 2001 and November 6, 2006 must be reversed, the only remaining question for the court is the scope of the remedy.  In this regard, remand for further administrative proceedings is ordinarily the appropriate remedy where the ALJ

has failed to apply the proper legal standard, and additional findings or explanation will address gaps in the record or clarify the rationale for the ALJ's decision. *Disarno v. Astrue*, 2008 WL 1995123, at *6 (W.D.N.Y. May 6, 2008) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). However, "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," reversal of the ALJ's decision and remand solely for the calculation of benefits is the appropriate remedy. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Fernandez v. Astrue*, 2013 WL 1291284, at *20-21 (E.D.N.Y. Mar. 28, 2013).

In this case, the ALJ's errors did not occur as the result of any significant evidentiary gaps or inconsistencies in the record, but rather, resulted from misapplication or disregard for the Commissioner's regulations, policies, and express instructions for considering all of the relevant evidence in a well-developed record. As the discussion above illustrates, there is substantial medical evidence, vocational evidence, and testimony in the record to support a finding that plaintiff's organic mental defects, visual deficits, cognitive deficits, and borderline intellectual functioning significantly eroded his opportunity for substantial gainful employment in any occupation during the relevant period, and there is no basis to conclude that remanding for additional findings or further explanation would support the Commissioner's decision.

Furthermore, plaintiff's application for benefits covering this period has been pending for more than eleven years; heard, adjudicated, and denied by ALJs three times; remanded by the Appeals Council twice; remanded once previously by this court on stipulation by the Commissioner. "[M]indful of the often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings

(and the possibility of further appeal) could result in substantial, additional delay …," *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (internal quotation marks and citations omitted), and in the exercise of its discretion considering the "remedial nature and humanitarian aims of the Social Security Act," *Harzewski v. Chater*, 977 F. Supp. 217, 225 (W.D.N.Y. 1997), the court finds that a fourth remand to the Commissioner for further proceedings would serve no purpose.

Accordingly, the case is remanded solely for the calculation of benefits for the disability period of April 1, 2001 through November 6, 2006.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 10) is granted, and the Commissioner's motion (Item 12) is denied.  Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and this matter is remanded to the Commissioner solely for the calculation of benefits for the disability period of April 1, 2001 through November 6, 2006.

The Clerk of the Court is directed to enter judgment in favor of plaintiff, and close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   January 29, 2014